FRANK O. HELLSTROM, and Clifford R. Norton, Copartners Doing Business under the Style and Firm Name of Hellstrom-Norton Brokerage Company, Respondents, v. J. L. PRICE and E. D. Smith, Copartners Doing Business under the Style and Firm Name of Price-Smith Fruit Company, Appellants.

(193 N. W. 51.)

**Brokers — seller held bound by contract whereby brokerage company was expected to solicit its own trade, in pursuance of which it solicited orders in its own name and forwarded them to seller, who accepted with knowledge of terms.**

1. In an action to recover commission and overage earned upon the sale of apples in carload lots for the defendant, it is *held:*

Where the written negotiations of the parties show that plaintiff was expected to solicit its own trade and where, in pursuance of the arrangement, it solicited orders in its own name and forwarded them to the defendant who accepted with knowledge of the terms, it is bound by the contract so evidenced.

**Brokers — attempt of brokerage company to cancel orders for apples rendered ineffective by seller's refusal does not preclude recovery of commission when later filled by seller.**

2. An attempt to cancel orders which is rendered ineffective by the refusal of principal, who had accepted the orders to cancel them, does not preclude recovery of commission and overage on account of such orders when later filled by the defendant.

**Brokers — broker may recover loss for failure to fulfil quality of goods sold.**

3. Where plaintiff, a broker, has sustained loss by reason of being held answerable to a purchaser on account of the failure of the fruit furnished by defendant to fulfil the warranty of quality, the broker may recover such loss in an action against the principal.

Opinion filed December 29, 1922.   Rehearing denied April 10, 1923.

Brokers, 9 C. J. § 68 p. 569 n. 79; § 73 p. 572 n. 3; § 107 p. 634 n. 29.

Appeal from the District Court of Burleigh County, *Coffey*, J. Affirmed.

*W. K. Amick*, and *Newton, Dullam & Young*, for appellants.

A broker is defined as "one whose occupation it is to bring parties together to bargain, or to bargain for them, in matters of trade, commerce, or navigation; he is essentially a middleman or go-between." Turner v. Crumpton, 21 N. D. 298.

If a broker employed to negotiate a transaction abandons the employment, he is not entitled to commission although the transaction is afterwards consummated. Williston, Contr. § 1475; 9 C. J. p. 562; Jackson v. Parrish, 157 Ala. 584, 47 So. 1014; Everett v. Farrell, 11 Ind. App. 185, 38 N. E. 872; Jones v. Buck, 147 La. 494, 126 N. W 452.

Before a broker is entitled to compensation he must show that he has completed his undertaking according to its terms. Mechem, Agency, § 965; 9 C. J. p. 588.

"So careful is the law in guarding against the abuse of fiduciary relations that it will not permit the agent to act for himself and his principal in the same transaction as to buy of himself as agent the property of his principal, or the like." People v. Township Bd. 11 Mich. 222; 2 C. J. 694; Smith v. Courant Co. 23 N. D. 297, 136 N. W. 781.

A broker has no authority to rescind or cancel a contract made for his principal. Mechem, Agency, § 950.

The alteration of the contract by the broker without the principal's consent, renders the contract void. Harrison v. Lakanan, 189 Mo. 581, 88 S. W. 53.

If a broker is engaged to sell for his principal and sells for himself, he is not entitled to compensation. Powers v. Black, 159 Pa. 53, 28 Atl. 133; Hammond v. Bookwalter, 39 N. E. 872; Finnerty v. Fritz, 5 Colo. 174; Diamond v. Fay, 23 Cal. App. 566, 138 Pac. 933; Albert

Booth Cohn Co. v. Lee, 117 N. Y. Supp. 550; Robbins & Warner v. Maher, 14 N. D. 228, 103 N. W. 755; Turner v. Crumpton, supra.

Thus it is error for the court to tell the jury what is the better evidence in a case. Chicago etc. R. Co. v. Robinson, 106 Ill. 142.

It is error also to charge that a controverted fact is established, or that any fact is conclusively proven. Hill v. Graham, 72 Mich. 659, 40 N. W. 779; Rushim v. Shields, 11 Ga. 636, 56 Am. Dec. 436; Ball v. Cox, 7 Ind. 453.

*Benton Baker,* for respondents.

In determining whether particular facts constitute one an agent, strictly so-called, or a broker, the circumstance that the employments are many or few, cannot be made the controlling test. Stratford v. Montgomery, 110 Ala. 619, 20 So. 127; Green v. United States, 25 App. D. C. 549.

BIRDZELL, Ch. J. This is an appeal from a judgment in favor of the plaintiff in an action to recover commission and overage earned in selling apples, and, upon a second cause of action, damages sustained through defendant's breach of warranty.

In the summer of 1920, the defendant, who is a car lot distributor of fruits and produce, doing business from St. Joseph, Missouri, sent to the plaintiff, a marketing agency in the city of Bismarck, North Dakota, a circular designed to interest plaintiff in selling apples in carload lots during that fall. Negotiations by correspondence resulted, and such contract as was made between the parties is evidenced by their correspondence. Early in the negotiations the defendant sent the plaintiff copies of specifications of fruit they would have to sell, quotations of prices, and an offer to pay a commission of $100 a car for the sale. They proposed to ship the cars direct to the plaintiff's customers and referred to the trade to be solicited by the plaintiff as "your trade." On September 6th, plaintiff wrote defendant as follows:

"Replying to your letter of the 2nd, beg to say that we can use forty or fifty of those circulars entitled "Western Boxed Apples." We also note what you say in regard to prices. Your price probably would have to be revised before shipping season as market conditions may change.

49 N. D.—44.

"We shall be very glad to handle your apples at $100 per car and would like to have you quote us your very best figure on car load of Jonathans for early shipment. Also state how soon you can get a car loaded, etc.

"Wish you would furnish us with the circulars and printed matter promptly so that we may be prepared to get the trade. We would like to have your proposition on bulk apples as we have a good many customers that desire bulk apples."

Replying to this letter on the 8th, the defendant said:

"We accept your proposition of selling apples for us at $100 per car commission, this commission to be paid upon acceptance and delivery of each car and we enclose you 50 specifications on Western Box and Western Bulk. . . ."

In this and later correspondence, an understanding was reached that the prices quoted by the defendants included a commission or brokerage of $100 per car, payable to the plaintiff, and in addition, an agreement effected that the plaintiffs were to be credited with overage where the price obtained exceeded the net price quoted.

On September 17th, plaintiff wrote advising that orders had been obtained for about five cars of bulk apples and ten of boxed apples, and in this letter it stated:

"We find, however, that some places are under our prices. Wish you would kindly keep in mind, that the only way we can get business, and deliver the goods is to guarantee the price against competition in same grade of stuff."

On September 28th, plaintiff forwarded to the defendant seven orders, each for one car, to be shipped to the following stations, respectively: Page, Michigan, Cando, Rolla, Twinbridge, Towner, and Gardena. In submitting the orders, plaintiff stated:

"We are submitting these orders and will expect you to return such as you cannot fill and allow us to draw on you for our brokerage upon receipt of these orders. Kindly wire us if you can accept and allow us to draw brokerage."

The following day plaintiff wired:

"Mailing bunch of orders. Since mailing have been offered Orchard Run Jonathans at dollar thirty and other varieties in proportion. Your price is out of line. What is your last word? We can sell them. Do

you want our business? Will hold open to hear from you. Answer here."

The following day defendant wired in reply:

"Letter twenty eighth received. We accept your orders with exception one to Twinbridge, North Dakota. Cannot agree furnish one half car Johnson's bulk. Will credit your account with brokerage and overage and remit you when apples are delivered as per your sales. You have our lowest prices."

This telegram was confirmed by letter on the same day which, however, was more specific as to the brokerage and overage. The letter stated "brokerage and overage to be paid when cars are delivered and paid for. We certainly cannot pay brokerage on the sale of a car. The transaction is not then complete, but your brokerage will be paid when the cars are delivered and paid for."

Each of the orders taken and forwarded to the defendant was taken in the name of the plaintiff and contained a provision to the effect that the price was guaranteed, with the explanatory remark that the shipper agrees to protect the dealer in case of lower market at time of delivery. October 7th, plaintiff wired defendant canceling three of the orders material here and directing the shipment of three others.

In response to this telegram the defendant both wired and wrote, refusing to cancel. It took the position that unless the buyers accepted the cars, it would sue for the difference in the market value, and advised the plaintiff of its suspicion that it had been quoted a lower figure and was trying to make an extra profit and that it was sacrificing defendant's position in the matter. Plaintiff replied, reminding the defendant that the orders provided for a guaranteed price and that apples were offered upon the market 20 cents lower. Defendant then wired accusing the plaintiff of not representing it and stating that it would meet the prices of legitimate competition to each individual buyer as advised of quotations. It took the position that it was not guaranteeing a price to the plaintiff but to the buyers, and insisted on filling the orders.

The evidence shows that the defendant filled the orders for deliveries at Page, Michigan, Rolla, Towner, and Gardena, and this action is for the commission and overage on these orders. It also filled an order at Beach, which the plaintiff had obtained, and upon which the latter contends it had sustained a loss by reason of the inferior quality of the

apples and of being held liable therefor to the purchaser. **This loss is** sought to be recovered here in the second cause of action. Trouble was experienced with the other purchasers likewise, who claimed that the fruit did not comply with the specifications, some or all of them reject-ing it on this ground.

Upon this appeal there are numerous specifications of error. It is contended, first, that the court erred in overruling the defendant's mo-tion for a directed verdict. The argument is that the contract places the plaintiff in the relation of a broker for its principal, the defendant, and that the plaintiff, having abandoned the employment, is not entitled to a commission; although the transaction be shown to have been con-summated afterwards. Loyalty to the principal being the first duty of the broker, it is said that one should not be permitted to place himself in a position where his private interest conflicts with his duty to his principal. It is claimed that the evidence shows a disregard of these fundamentals of the legal relationship, that consequently no recovery can be had. We are of the opinion, however, that the contract as evi-denced by the correspondence is one whereby the broker, contrary to the usual rule in such cases, was expected to contract in its own name. Consequently it was free to solicit orders and to forward them to what-ever jobber it might choose. This interpretation of the contract, evi-denced by the early negotiations, is strengthened by the fact that when the orders were received by the defendant, no criticism was offered on account of the orders being taken in plaintiff's name. As we construe the correspondence, the plaintiff did not bind itself to confine its ef-forts in the sale of apples to those furnished by the defendant.

As to the contention that the plaintiff abandoned the agency as to these particular orders through the attempted cancelation, we think it is clear that so long as the defendant did not recognize the cancelation as being within the plaintiff's rights, plaintiff can abandon, as it has done for the purpose of this action, any rights it might have predicated on the defendant's refusal to cancel and treat the contract as being in force. The defendant has recognized the contract by shipping the ap-ples on the orders furnished by the plaintiff, and it is therefore pre-cluded from asserting that it is not bound. It cannot accept the benefits and absolve itself from the burdens.

There are a number of specifications directed to errors in the admis-

sion of testimony. These relate principally to testimony of the character of hearsay. The record shows that for the most part evidence that was open to this objection was ruled out when objection was made, with a few possible exceptions, and that in those exceptions the testimony relates to matters that are not seriously controverted. Appellant also complains that it was prejudiced by the failure of the court to rule promptly on objections and by reserving rulings and permitting evidence to go in for the time being. This is a practice that is not, of course, to be commended, but, in view of the manner in which the real issues in the case appear to have been obscured during the greater part of the trial, this practice is not without some justification in the instant case. At any rate, we are impressed that the defendant was not prejudiced by the rulings on the evidence, and it will serve no good purpose to discuss the alleged objectionable rulings in detail.

Error is also predicated on the instructions of the court to the jury. The instructions are lengthy and the specifications thereon numerous. We are satisfied, however, that they properly state the issues and the law applicable to the same, and that they do not transcend the legitimate bounds at any point by usurping the functions of the jury. Wherever the court referred to facts as being undisputed, they were facts that had been proved by the defendant's unequivocal conduct or by its own written admissions.

Upon the second cause of action, the court instructed the jury that if they should find the plaintiff suffered a loss by virtue of a breach of the warranty of the quality of the fruit, furnished to the Economy Store at Beach, it was entitled to recover such sum as it suffered by reason of the failure of the fruit to reach the quality warranted. It is argued that this does not properly state the measure of damages for breach of warranty of quality; that the true measure is the excess of value which the property would have had, had the warranty been complied with, over its actual value. In this connection, we may also note the error assigned upon the admission in evidence of the judgment recovered against the plaintiffs at the suit of the purchaser, the Economy Store. While the appellant correctly states the rule of damages applicable in suits for breach of warranty of quality between vendor and purchaser, it does not follow that the instruction complained of is erroneous. The relation between this plaintiff and defendant was such that the defend-

ant is answerable to the plaintiff for any loss it reasonably sustained by reason of the former's breach of warranty. Inasmuch, however, as it does not appear that the defendant was given an opportunity to defend the suit previously brought by the Beach Economy Store against the plaintiff, it is clear that the defendant is not answerable for the amount of the judgment. But the court did not regard this as the measure of the plaintiff's loss under this cause of action. It specifically directed the jury that it should disregard the amount of the judgment in assessing that loss. There is abundant evidence, however, of the condition of the car of apples delivered to the Economy Store, showing the percentage of defective fruit, to afford abundant legal basis for a loss to the plaintiff in the amount of the judgment based upon this cause of action. There is a specific finding, in response to an interrogatory submitted by the court, as to the amount included in the verdict on account of the second cause of action, and this was reduced in the court below to an amount that is well within the evidence.

We are of the opinion that the record as a whole does not reveal any errors prejudicial to the defendant. On the contrary it appears that a fair trial has been had. The judgment is affirmed.

CHRISTIANSON and BRONSON, JJ., concur.

ROBINSON, J., dissents.

GRACE, J. (specially concurring). I am of the opinion that the result arrived at in the principal opinion is correct. I am also of the opinion there is no reversible error in the record.

On petition for rehearing.

BIRDZELL, J. The original opinion in this case is in itself an indication of the unsatisfactory character of the record upon which the judgment is based. This is due to a variety of circumstances, chief of which may be mentioned, first, the fact that at the trial the parties were at variance as to the theory upon which it was sought to recover on the one hand and to defend on the other; second, the evidence is quite inconclusive as to the ultimate disposition of the apples that were ac-

tually shipped. Some of it is hearsay and was properly objected to. We think, nevertheless, that the record clearly establishes, prima facie, the right of the plaintiff to recover and that there was no prejudicial error in the instructions or in the trial going to the root of the plaintiff's cause of action. A careful resurvey of the record, however, upon the petition for rehearing, leads us to the conclusion that the evidence does not sufficiently establish the purchase of the apples by the various customers at invoice prices to support the claim for overage. In the plaintiff's correspondence it is intimated that the defendant's prices are too high. In fact, it is stated that they are "out of line," and inasmuch as all the orders taken embodied a stipulation guaranteeing the price, the plaintiff is obviously not in a position to recover overage based on the stipulated price if, as a matter of fact, the purchasers might properly have objected to the payment of the full price on the ground that the market had declined or was lower than the price mentioned in the orders and invoices. Under the terms of the contract in question it was incumbent on the plaintiff, in order to recover overage, to establish either actual settlements by the customers on a basis that would entitle it to overage, or, if the apples were rejected on account of quality, that overage would have been recoverable under the market conditions had the apples not been rejected. The amount of the judgment thus affected on this record is $567.20. The order of this court is that upon the filing of a remittitur of $567.20, the judgment is affirmed; otherwise, that the judgment be reversed and a new trial granted. In any event, the appellant will recover costs on this appeal.

CHRISTIANSON and BRONSON, JJ., concur.